**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SG STONEGATE ASSET COMPANY I, LLC, a Delaware limited liability company, | No. 1:25-cv-07909 |
| Plaintiff, | Hon. Manish S. Shah |
| v. | |
| GSC ENTERPRISES, INC., a California corporation, *et al.*, | Hon. M. David Weisman |
| Defendants. | |

**RECEIVER'S MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO**
**MOTION (I) FOR RECONSIDERATION UNDER RULE 54 AND (II) TO ALLOW**
**SECURED SUBROGATION CLAIM OF SCOTT TAYLOR**

Matthew Brash of Newpoint Advisors Corporation, not individually, but solely in his capacity as receiver (the "Receiver") of the defendants in the above-captioned action,[1] requests leave to file a sur-reply (the "Sur-Reply") in opposition to Scott Taylor's ("Taylor") *Motion (I) for Reconsideration Under Rule 54 and (II) to Allow Secured Subrogation Claim of Scott Taylor* (the "Motion") [ECF 218]. The Sur-Reply is necessary to address new legal arguments, factual allegations and evidentiary submissions made in Taylor's reply brief [ECF 260] (the "Reply"). In support of this motion, the Receiver states as follows:

1.      On September 25, 2025, the Court entered an order (the "Approval Order") approving a stipulation (the "Stipulation") between Plaintiff SG Stonegate Asset Company I, LLC ("SG") and the Receiver. Among other things, the Approval Order: (i) allowed SG's claim against the receivership estate in the amount of $2,460,558.79; (ii) authorized an "indefeasible and

---

[1] The defendants in this action are GSC Enterprises, Inc.; GSC Logistics, Inc. ("GSC Logistics"); Best Way Trucking, Inc.; GSC National Transportation, Inc.; GSC Solutions, Inc.; GSC Transport, Inc.; Macmillan-Piper LLC; Tacoma Transload LLC; GSC Logistics Norcal Brokerage, Inc.; and GSC Logistics PNW Brokerage, Inc.

irrevocable" interim distribution to SG in the amount of $1,960,490.10 on account of its claim; and (iii) subordinated SG's remaining claims to all claims other than certain specified claims [ECF 161].

2. On February 19, 2026, Taylor filed his Motion seeking (i) reconsideration of the Approval Order on the basis that the Stipulation "equitably subordinated" his claims without his consent and (ii) allowance of an alleged $1 million "secured subrogation claim" (the "Pledge Claim").

3. On April 15, 2026, the Receiver filed an opposition (the "Opposition") to the Motion. In the Opposition, the Receiver argued, among other things, that: (i) the Motion was untimely; (ii) reconsideration of the Agreed Order was inappropriate because Taylor's claims were contractually subordinated under a subordination agreement (the "Subordination Agreement"); and (iii) the Pledge Claim should be disallowed because equitable subrogation is inappropriate unless and until: (a) SG is paid in full, and (b) Taylor repays a $957,887 loan he received from GSC Logistics (the "GSC Logistics Loan"), which matured on June 27, 2025, and which Taylor improperly instructed Defendants to write off on July 7, 2025.

4. On May 13, 2026, Taylor filed his Reply. In the Reply, Taylor raises several new legal and factual arguments in support of the Motion including that: (i) the Rule of Explicitness requires that the Subordination Agreement contain explicit language permitting SG to subordinate its claim to claims of third parties; (iii) the GSC Logistics Loan was never "written off" and remains outstanding in the amount $957,887; and (iv) the maturity date of the GSC Loan was actually extended through January 1, 2029 by virtue of a First Amendment to Promissory Note dated December 2, 2024 (the "First Amendment") signed by Taylor and David Arsenault, the

2

former President of GSC Logistics. The Reply was also accompanied by new declarations – one from Taylor and one from Arsenault – that each included a copy of the purported First Amendment.

5.      This Court has discretion to permit a sur-reply, including "when the movant raises new arguments in a reply brief." *Meraz-Camacho v. United States*, 417 Fed. Appx. 558, 559 (7th Cir. 2011). A reply brief is not the proper place for new arguments, and "[r]aising material in a reply brief that ought to have been raised in an opening brief is inappropriate." *Paramount Media Group, Inc. v. Vill. of Bellwood*, No. 12 C 3994, 2015 U.S. Dist. LEXIS 152869, at *2 (N.D. Ill. Nov. 10, 2015). Courts disapprove of this tactic as "[l]oading-up on a reply brief effectively results in a onesided presentation." *Id.; see also Franek v. Walmart Stores, Inc*., 2009 U.S. Dist. LEXIS 20361, at *60 n.14 (N.D. Ill. Mar. 13, 2009) (a moving party "sandbags" an adversary by raising new arguments in a reply brief"). Allowing a sur-reply therefore "provides the court with the information necessary to make an informed decision." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 329 (N.D. Ill. 2005).

6.      Because the Receiver has not had an opportunity to respond to Taylor's new legal arguments, factual allegations, and evidentiary submissions, the Receiver seeks leave to file the Sur-Reply.

WHEREFORE, the Receiver respectfully requests that this Court enter an order granting the Receiver leave to file the sur-reply attached hereto as **Exhibit 1**.

3

Respectfully submitted,

Matthew Brash of Newpoint Advisors
Corporation, not individually, but solely in
his capacity as Receiver

Dated: June 4, 2026

By:   /s/ Allen J. Guon
      One of his attorneys

Allen J. Guon
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-4450
aguon@cozen.com
*Counsel for the Receiver*

4

LEGAL\115782408\2

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SG STONEGATE ASSET COMPANY I, LLC, a Delaware limited liability company, | No. 1:25-cv-07909 |
| Plaintiff, | Hon. Manish S. Shah |
| v. | |
| GSC ENTERPRISES, INC., a California corporation, *et al.*, | Hon. M. David Weisman |
| Defendants. | |

**RECEIVER'S SUR-REPLY IN OPPOSITION TO MOTION (I) FOR
RECONSIDERATION UNDER RULE 54 AND (II) TO ALLOW SECURED
SUBROGATION CLAIM OF SCOTT TAYLOR**

Matthew Brash of Newpoint Advisors Corporation, not individually, but solely in his capacity as receiver ("Receiver") of the defendants in the above-captioned action,[1] respectfully submits this sur-reply in further support of his opposition [ECF 254] (the "Opposition")[2] to Scott Taylor's ("Taylor") *Motion (I) for Reconsideration Under Rule 54 and (II) to Allow Secured Subrogation Claim of Scott Taylor* (the "Motion") [ECF 218], and in response to Taylor's reply in support of his Motion [ECF 260] (the "Reply"):

**Introduction**

This sur-reply addresses the following legal arguments, factual assertions, and documents that Taylor raises for the first time in his Reply:

- First, Taylor argues that the Subordination Agreement does not permit SG to enter into a settlement that results in the subordination of his asserted claim relative to other creditors. In support, he invokes the inapplicable "Rule of Explicitness," and then limits his analysis to Sections 15 and 21 of the

---

[1] The defendants in this action are GSC Enterprises, Inc.; GSC Logistics, Inc.; Best Way Trucking, Inc.; GSC National Transportation, Inc.; GSC Solutions, Inc.; GSC Transport, Inc.; Macmillan-Piper LLC; Tacoma Transload LLC; GSC Logistics Norcal Brokerage, Inc.; and GSC Logistics PNW Brokerage, Inc.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Opposition.

**EXHIBIT 1**

Subordination Agreement while ignoring other provisions that establish SG's contractual right to enter into the Stipulation.

- Second, Taylor's request to allow the $1 million CC Pledge Claim fails because he now concedes that the GSC Logistics Loan was never "written off" and remains outstanding in the amount $957,887. The CC Pledge Claim cannot be allowed until the GSC Logistics Loan is satisfied in full – either in cash or as a set off against the CC Pledge Claim. Any other result would be highly inequitable to the creditors of the receivership estate and delay distributions and the closing of the receivership.

- Third, Taylor newly asserts – based on two belated declarations – that the GSC Logistics is not in default due to a purported maturity extension to January 1, 2029. This argument is untimely and waived. Even if considered, it is irrelevant to whether the loan must be satisfied before his CC Pledge Claim can be allowed.

Although Taylor's new assertions and previously undisclosed documents may warrant further investigation by the Receiver, they do not justify reconsideration or allowance of his CC Pledge Claim. Accordingly, the Court should be denied in its entirety.

### **Argument**

**A.** **Taylor Fails to Identify Any Manifest Error of Law or New Evidence Warranting Reconsideration**

Taylor is not entitled to the relief he seeks. "Motions for reconsideration serve a limited function: to correct manifest errors of law of fact or to present newly discovered evidence." *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982) (citation omitted); *see also Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous [non-final] ruling in the same litigation … is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous.") (citations omitted).

Here, Taylor neither identifies a manifest error of law nor presents newly discovered evidence supporting reconsideration. The Subordination Agreement unambiguously provides that:

2

LEGAL\115906830\1

- Taylor subordinated all of his claims until SG is paid in full;

- Taylor's subrogation rights are waived until that condition is met; and

- SG may, in its "sole and absolute discretion," *settle, waive, or modify, its own claims under the Loan Documents and release its Collateral* without affecting Taylor's junior status or creating any rights in him.

Opp., Ex. 1, §§ 3.2(a); 3.6; 10, 11. Taylor also agreed not to challenge the validity or enforceability of the Loan Documents or interfere with SG's enforcement of its rights and remedies – including actions to effectuate the subordination. Opp., Ex. 1 at §§ 3.2(a), 3.4(a), 3.4(c), 10, 11, 13. These unambiguous provisions are enforceable as written and dispositive. *See J-Bar Reinforcement, Inc. v. Crest Hill Capital LLC*, 169 A.D.3d 499–500, 94 N.Y.S.3d 255 (1st Dep't 2019) (holding that "the plain, unambiguous language" of a subordination agreement was enforceable and "[t]he commercial reasonableness of th[e] agreement is irrelevant where there is no ambiguity").

Consistent with the Subordination Agreement, the Stipulation provided that any debt contractually subordinated to SG under the Loan Documents would remain contractually subordinated to SG's indebtedness until SG was paid in full. Approval Order, Ex. 1 at 4. The bargained-for terms defeat any argument that the Stipulation modified, let alone "equitably subordinated," Taylor's rights under the Subordination Agreement. Accordingly, the Court had all relevant information when it entered the Approval Order, and Taylor identifies no factual or legal error warranting reconsideration.

1. *The Subordination Agreement Permits the Settlement*

Taylor concedes that he agreed "that any indebtedness owed to him by the Defendants would be subordinated to any indebtedness Defendants owed to SG under the Loan Agreement." Reply, at 5. However, Taylor then argues that SG lacked authority to subordinate his claims relative to other creditors of the receivership. *Id.* This misreads the Subordination Agreement.

3

In support of his argument, Taylor selectively relies on Sections 15 and 21 of the Subordination Agreement while ignoring dispositive provisions of the Subordination Agreement cited by the Receiver – *i.e.*, §§ 3.2(a), 3.4(a), 3.4(c), 10, 11, 13. While Section 21, relating to third party beneficiaries, is irrelevant to this dispute, Section 15 actually supports the Receiver's position that SG acted within its contractual rights to enter into the Stipulation without Taylor's consent.

Section 15 expressly permits SG to extend additional financing to the Companies, which would take priority over Taylor's claims during any bankruptcy or insolvency proceeding (such as a receivership) without his consent. *See* Opp., Ex. 1, § 15. Moreover, Taylor waived his right to object to any additional financing. *Id.* While Taylor myopically focuses on the fact that Section 15 of the Subordination Agreement does not expressly address the priority of Taylor's claims vis-à-vis third party claims, Taylor misses that SG could have provided more financing to Defendants – with no maximum limit – ahead of Tayor's claims, without Taylor's consent.

Importantly, Section 10 allows SG, "in its sole and absolute discretion," to modify its claims and release its Collateral as part of a settlement without Taylor's consent. *See* Opp., Ex. 1 at §§ 10(c), (d). Under these unambiguous provisions, SG could have agreed to release all of its Collateral in exchange for a general unsecured claim in the amount of Remaining Claim without approval from Taylor – placing the Remaining Claim on parity with all general unsecured creditors. Taylor clearly would have no legal basis whatsoever to object to that settlement. Because all general unsecured claims are paid pro rata, Taylor would have no subrogation rights until all of the receivership's creditors are paid in full. Such a settlement has exactly the same impact on Taylor that he is currently seeking to disrupt while diluting the recoveries of all other creditors. Thus, the Stipulation approved by the Court actually benefits the receivership estate's unsecured creditors without causing additional harm to Taylor.

4

2.      *The "Rule of Explicitness" is Inapplicable*

Taylor relies on "Rule of Explicitness" to argue that the Subordination Agreement must expressly grant SG the right to subordinate its claim to claims of third parties. This argument is misplaced. The Rule of Explicitness does not apply broadly to any and all provisions of a subordination agreement—only those provisions of a subordination agreement that address post-petition interest in bankruptcy proceedings.

The Rule of Explicitness provides that, in federal bankruptcy proceedings, senior secured creditors are only entitled to receive post-petition interest prior to any distributions to junior creditors if the relevant subordination agreement expressly waives the rule prohibiting the accrual of interest on senior debt after the bankruptcy petition date. *Id.* at 22.[3]  Both cases cited by Taylor in connection with the Rule of Explicitness relate to the impact of pre-petition subordination or intercreditor agreements on distributions in bankruptcy. *See U.S. Bank Nat'l Ass'n v. T.D. Bank, N.A.*, 569 B.R. 12 (S.D.N.Y. 2017) (a declaratory judgment action by one creditor against another regarding the impact of a pre-petition intercreditor agreement on the distribution of proceeds in a bankruptcy case); *In re Se. Banking Corp.* 93 N.Y.2d 178 (1999) (New York Court of Appeals opining on a question certified to it by the Eleventh Circuit in connection with the impact of a pre-petition subordination agreement on distributions in a bankruptcy case: "What, if any, language does New York law require in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of the senior creditor's post-petition interest?").[4]

---

[3] Incidentally, the Subordination Agreement contains such language. *See* Opp., Ex. 1, § 15 (post-petition additional indebtedness would become part of the indebtedness to SG under the Subordination Agreement, "together with any and all interest or fees thereon").

[4] Court developed the Rule of Explicitness under the Bankruptcy Act, which did not address contractual subordination. The Bankruptcy Code, which superseded the Bankruptcy Act, provided in section 510 that subordination agreements are enforceable in bankruptcy cases "to the same extent that such agreement is enforceable under applicable nonbankruptcy law." *See U.S. Bank*, 569 B.R. at 20 (citing 11 U.S.C. § 510(a)). This is why the Eleventh Circuit asked the New York Court of Appeals to opine whether the

5

Taylor provides no authority extending the rule to determine the language that must be contained in a subordination agreement for a secured creditor to settle with a receiver.[5] Moreover, Taylor can point to no provision of the Subordination Agreement that prohibits SG from negotiating an agreement to receive a substantial payment upfront in exchange for subordinating the remainder of its claim. Finally, Taylor cites no authority that counteracts the general rule that the express terms of a subordination agreement are enforceable, regardless of the subjective reasonableness thereof. *See J-Bar Reinforcement*, 169 A.D.3d at 499-500. Thus, the Subordination Agreement explicitly authorizes SG's actions, and Taylor identifies no law overriding its plain terms. For these reasons, the Motion should be denied on the merits.

**B.      The CC Pledge Claim Should Not be Allowed.**

Separately from his request for reconsideration of the Approval Order, Taylor asks the Court to allow his purported $1 million CC Pledge Claim and deem it secured, as subrogated to the rights of SG. Mot., at 14. Taylor's request for allowance of the CC Pledge Claim should be denied for three independent reasons.

First, Taylor's subrogation rights have not arisen because SG has not been paid in full. Taylor concedes that (i) SG must be paid in full before his subrogation rights arise and (ii) SG has not been paid in full. *See* Reply, at 11. The sole basis for Taylor's CC Pledge Claim against the receivership is through equitable subrogation to the rights of SG – and that right has not yet arisen. For that reason, the CC Pledge Claim cannot be allowed.

---

Rule of Explicitness applied in bankruptcy cases under New York contract law, and this is why New York adopted the Rule of Explicitness "as a substantive principle of New York contract law" in that case.

[5] The sole case cited by Taylor for this argument, *Arrowhead Cap. Fin., Ltd. v. Seven Arts Pictures PLC*, 110 A.D.3d 514, 972 N.Y.S.2d 899 (2013), relates to neither the Rule of Explicitness nor the ability of a senior creditor to settle with a federal receiver or otherwise agree to subordinate a portion of its debt.

6

Second, Taylor now belatedly admits that he still owes $957,887 under the GSC Logistics Loan and that it was not "written off." *See* Declaration of Scott Taylor in Support of Reply [ECF 262] (the "Taylor Reply Declaration"). He also admits that he cannot repay the loan. See ECF 220-1 at ¶ 11. Since he admits his inability to pay GSC Logistics Loan, equity requires that it be set off against the CC Pledge Claim. Under New York law, parties that owe one another money are entitled to apply their mutual debts against one another, "thereby avoiding the absurdity of making A pay B when B owes A." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2nd Cir. 2002) (citation omitted). The right of setoff in receiverships has been codified in New York Debtor and Creditor Law § 151. Debts may arise from different transactions, but if the obligations are mutual, they may be set off. *D'Urso*, 278 F.3d at 149 (citing *Kemper Reins. Co. v. Corcoran (In re Midland Ins. Co.)*, 79 N.Y.2d 253, 582 N.Y.S.2d 58, 590 N.E.2d 1186, 1189 n.2 (1992); *Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 740 (Bankr.S.D.N.Y.1995) (other citations omitted)). "[D]ebts are mutual when they are due to and from the same persons in the same capacity." *Id.* at 149 (citing *In re Midland Ins. Co.*, 79 N.Y.2d 253, 582 N.Y.S.2d 58, 590 N.E.2d 1186, 1192 (1992)).

Here, Taylor's asserted CC Pledge Claim and the GSC Logistics Loan are mutual debts that must be applied against each other. Under the Loan Agreement, GSC Logistics is jointly and severally liable for the entire amount of SG indebtedness. Loan Agr. at § 2.7 ("The Revolving Loans shall constitute one general joint and several obligation of the Borrowers…."). Under the GSC Logistics Loan, Taylor owes GSC Logistics the amount of $957,887. If Taylor is subrogated to the rights of SG, then GSC Logistics' claim against Taylor and Taylor's subrogation claim against GSC Logistics are clearly mutual debts that should be set off. *See, e.g., Westinghouse*, 278 F.3d at 149. Allowing the CC Pledge Claim before satisfying the GSC Logistics Loan would

7

therefore be inequitable and prejudicial to creditors and likely delay distributions to creditors and closure of the receivership.

Third, Taylor's new argument that the GSC Logistics Loan is not in default due to a purported maturity extension is waived because it was raised for the first time in reply. *See, e.g., Taylor v. Weitzman*, 470 F. Supp. 3d 806, 810 (N.D. Ill. 2020) (arguments raised in reply briefs for the first time may be waived) (citing *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011)). Even if considered, this argument fails. Taylor appears to belatedly argue that because the maturity date of GSC Logistics Loan was purportedly extended until January 1, 2029, the CC Pledge Claim should be allowed even if the GSC Logistics Loan is not satisfied. A maturity extension affects timing and not the obligation to repay. And, as discussed above, regardless of when the GSC Logistics note matures, equity requires that prior to GSC Logistics Loan be satisfied in full – i.e., paid off in cash or setoff against CC Pledge Claim – before the CC Pledge Claim can be allowed. Thus, GSC Logistics Loan must be satisfied in full prior allowance of the CC Pledge Claim against the receivership estate.

Further, Taylor's new argument that GSC Logistics and Taylor entered into an amendment (the "First Amendment") to the GSC Logistics Note that extended its maturity date through January 1, 2029 is suspect.[6] It is supported by the untimely Taylor Reply Declaration and a

---

[6] Prior filing the Reply, Taylor asserted that he directed the Companies to write off the GSC Logistics Loan. *See* Mot., at 14 n.12; Opp., at 17. In the Reply, Taylor now argues it was a "conditional" write-off that did not actually occur. *See* Reply, at 3. Taylor represents that the Companies were negotiating with a potential buyer in the second quarter of 2025 to purchase the equity in the Companies and, in furtherance of such potential sale, Taylor, "in consultation with the [Companies'] tax advisor and attorneys," instructed for the GSC Logistics Loan to be written off and applied against retained earnings. *Id.* He claims that "[t]he elimination of the [GSC Logistics] Loan and reduction of retained earnings was intended to lower the book value of the Defendants' business, making it easier for the potential buyer to obtain funding." *Id.* Taylor claims that he "understood that the write-off of the [GSC Logistics] Loan would be conditioned on the sale closing because otherwise the write-off would constitute a prohibited dividend since the Defendants were insolvent." *Id.* at 13-14. Taylor's post hoc analysis is contrary to all email communications in the Receiver's possession, which will be provided in connection with any evidentiary hearing.

8

declaration from David Arsenault, the former President of GSC Logistics [ECF 264] (the "Arsenault Declaration"). To date, the Receiver has found no reference to the purported First Amendment in any documents or records of the Companies. It is also inconsistent with the Companies' records, absent from contemporaneous documents, and unsupported by payment history. Its authenticity is therefore in question.[7] For these reasons, the Receiver cannot determine that the First Amendment is a genuine document. To the extent that the Court deems the maturity date relevant to the allowance of the CC Pledge Claim, the Receiver requires additional time to review and analyze GSC Logistics' records and commence discovery to evaluate it.

## Conclusion

WHEREFORE, the Receiver requests that this Court enter an order: (i) denying Taylor's Motion; (ii) declining to reconsider the Approval Order; (iii) denying the request for allowance of Taylor's CC Pledge Claim; and (iv) granting such other and further relief as is just and equitable.

Respectfully submitted,

Matthew Brash of Newpoint Advisors Corporation, not individually, but solely in his capacity as Receiver

Dated: June ___, 2026

By: __/s/_____
        One of his attorneys

Allen J. Guon
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-4450
aguon@cozen.com

---

[7] For example, the Loan Agreement is dated December 20, 2024 – over two weeks after Taylor and Arsenault claim they executed the First Amendment – contains a list of all debts in Schedule 6.1. All of Taylor's loans to GSC Enterprises are listed on Schedule 6.1 as having an extended expiration term through January 1, 2029. *See* Cmpl., Ex. A, Sched. 6.1. However, Schedule 6.1 also lists the GSC Logistics Loan with a corresponding maturity date of June 27, 2025 – *i.e.*, its original maturity date. *See, id.*

LEGAL\115906830\1

## CERTIFICATE OF SERVICE

Allen J. Guon certifies that he caused to be served a true and correct copy of the above **Notice of Motion** and the **Receiver's Motion for Leave to File Sur-Reply in Opposition to Motion (I) for Reconsideration under Rule 54 and (ii) to Allow Secured Subrogation Claim of Scott Taylor** upon the attached Electronic Mail Notice List via CM/ECF (unless otherwise indicated) on June 4, 2026.

/s/ Allen J. Guon

**Mailing Information for a Case 1:25-cv-07909 SG Stonegate Asset Company I, LLC v. GSC Enterprises, Inc. et al**
**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Richard Scott Alsterda**
  rsalsterda@nixonpeabody.com
- **Louis J. Cisz , III**
  lcisz@nixonpeabody.com
- **James L. Craney**
  james.craney@craneylaw.com,kristi.dunnagan@craneylaw.com,ryleigh.baldwin@craneylaw.com,heather.koerkenmeier@craneylaw.com
- **Travis Jon Eliason**
  teliason@clarkhill.com,rrschultz@clarkhill.com
- **Mary V. Gilmore**
  mgilmore@beneschlaw.com,dgeorge@beneschlaw.com,docket2@beneschlaw.com
- **Allen Jay Guon**
  aguon@cozen.com,cknez@cozen.com,allen-guon-6333@ecf.pacerpro.com
- **Inderjit Johal**
  indjohal943@gmail.com
- **Mandeep Kamboj**
  Kambojmandeep1@yahoo.com
- **Oksana Koltko Rosaluk**
  oksana.koltkorosaluk@dlapiper.com,rosaluk-koltko-5711@ecf.pacerpro.com,chicago-docketing-7916@ecf.pacerpro.com
- **Christopher Joseph Letkewicz**
  cletkewicz@beneschlaw.com,docket2@beneschlaw.com,tjohnson@beneschlaw.com
- **George Mesires**
  george.mesires@faegredrinker.com,cathy.greer@faegredrinker.com,darlene.walker@faegredrinker.com,faegrebddocket@faegrebd.com
- **Sven Thure Nylen**
  snylen@beneschlaw.com,DGeorge@beneschlaw.com,docket2@beneschlaw.com,jhoover@beneschlaw.com
- **Jack O'Connor**
  joconnor@lplegal.com,druiz@lplegal.com,kpatton@lplegal.com,ikropiewnicka@lplegal.com,nbailey@lplegal.com
- **Dennis E. Quaid**
  dquaid@fagelhaber.com,eFileDocket@fagelhaber.com

5

LEGAL\115906714\1

- **Baljit Sandhu**
  baljit63@att.net
- **Christina M Sanfelippo**
  csanfelippo@cozen.com,christina-sanfelippo-5069@ecf.pacerpro.com,cknez@cozen.com
- **Bryan Schatz**
  bschatz@clarkhill.com,jcericola@clarkhill.com
- **Craig L Schechter**
  cschechter@beesontayer.com
- **Devinder Singh**
  ACETRANS17@gmail.com
- **Pargat Singh**
  gurmukh1112@gmail.com
- **Devvrat Vikram Sinha**
  devvrat.sinha@usdoj.gov,andrea.anderson@usdoj.gov,usailn.ecfausa@usdoj.gov,pamela.vargas@usdoj.gov,patty.jo.stewart@usdoj.gov,monique.hopkins@usdoj.gov,caseview.ecf@usdoj.gov,vanessa.cardona@usdoj.gov,linda.wawzenski@usdoj.gov
- **James B. Sowka**
  jsowka@seyfarth.com,3913483420@filings.docketbird.com,ctholen@seyfarth.com
- **Gregory K. Stern**
  greg@gregstern.com
- **Matthew J. Stockl**
  mstockl@otterbourg.com,matthew-stockl-3592@ecf.pacerpro.com

**Manual Notice List (Via E-Mail)**

Matthew Brash
Graham McFarland
Scott Caruthers
Newpoint Advisors
mbrash@newpointadvisors.us
gmcfarland@newpointadvisors.us
scaruthers@newpointadvisors.us

Derek O. Myers
Chauvel & Glatt, LLP
derek@chauvellaw.com

Scott Taylor
GSC Enterprises
taylormade4scott@outlook.com

Justin Taylor
GSC Enterprises
Justinbtaylor1000@gmail.com

Tirath Singh
TBG Transport
tgbbatth@gmail.com

Jagpreet Singh
Sihana Transport, Inc.
sihanatransportinc@gmail.com

Gurinder Singh
GM Trucking
gmtrucking209@gmail.com

Inderjit Johal
Johal Trucking LLC
indjohal943@gmail.com

Mandeep Kamboj
LMN Transport
Kambojmandeep1@yahoo.com

6

LEGAL\115906714\1

7

Baljit Sandhu
baljit63@att.net

Devinder Singh
ACE Trans
ACETRANS17@gmail.com

Rodman E. Honecker
Windels Marx Lane & Mittendorf, LLP
rhonecker@windelsmarx.com

Charles Persing
Christopher L. Phillipps
Bederson LLP
cpersing@bederson.com
cphillipps@Bederson.com

Nicolas Sanchez
Miller Kaplan
NSanchez@millerkaplan.com

7